UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

EUNICE DESHIELDS,

      Plaintiff,

v.                               CASE NO. 3:14-cv-543-J-34MCR

JEH JOHNSON, Secretary, Department of
Homeland Security, LORI SCIALABBA,
Acting Director, Citizenship and Immigration
Services, RUTH DOROCHOFF, District
Director, Citizenship and Immigration
Services, Tampa, Florida, and WARREN
JANSSEN, Field Office Director, Citizenship
and Immigration Services, Orlando, Florida,

      Defendants.

_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Defendants' Motion to Dismiss or, in

the Alternative, for Summary Judgment ("Defendants' Motion") (Doc. 25), Plaintiff's

Response in Opposition thereto (Doc. 29), Plaintiff's Motion for Summary

Judgment ("Plaintiff's Motion") (Doc. 24), and Defendants' Response in Opposition

thereto (Doc. 30).  For the reasons stated herein, the undersigned respectfully

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations."  Fed.R.Civ.P. 72(b)(2).  "A party may respond to another party's objections within 14 days after being served with a copy."  *Id.*  A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made.  *See* Fed.R.Civ.P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; M.D. Fla. R. 6.02.

**RECOMMENDS** that Defendants' Motion be **GRANTED** and Plaintiff's Motion be **DENIED**.

## I.    Background

Plaintiff, a native and citizen of Nigeria, was granted asylum by the United States Citizenship and Immigration Services ("USCIS"), on July 26, 2007.[2]  (Doc. 1 at ¶¶ 1, 12; AR 253.)  In September 2007, Plaintiff filed a Refugee/Asylee Relative Petition (Form I-730) with the USCIS on behalf of her daughter Efe Teshyimensah ("Efe"), a citizen of Nigeria, born in 1982, for derivative status as a biological child of an alien granted asylum in the United States.  (Doc. 1, ¶¶ 13-14; AR 245-46.) On January 2, 2014, the USCIS denied the Petition (Form I-730) due to Plaintiff's failure to identify and list Efe on Plaintiff's own asylum application (Form I-589) prior to its adjudication.  (Doc. 1, ¶ 15; AR 174-75.)  The USCIS stated:

> [A]ccording to the instructions on the Form I-730, "in order to be considered a derivative child, the principal alien must have listed the child on Form I-589, Registration for Classification as Refugee, as appropriate, prior to the derivative's 21st [birthday] and prior to adjudication of the application."  Your Request for Asylum in the United States (Form I-589) does not list the beneficiary, nor was the beneficiary added to the request for asylum prior to its adjudication by

---

[2] Plaintiff applied for asylum by filing Form I-589 with the Immigration and Naturalization Service ("INS"), on December 13, 1993.  (AR 131-36.)  In Section 16 of Form I-589, which asked for information about the applicant's spouse and all unmarried children under the age of 21, Plaintiff listed one child, Princess Oghenerumere Deshields ("Princess"), born in 1990 in New York, and indicated that no children were included in the request for asylum because the listed child is a United States citizen.  (AR 131.)  In Section 18 of the same form, Plaintiff referenced the same child, Princess, who was listed in Section 16.  (AR 132.)

> an immigration judge.  The only child listed on your Form I-589 is
> Princess Oghenerumere Deshields.  As a result, the beneficiary's age
> is not protected under the CSPA and she is ineligible for the benefit
> sought.

(AR 175 (emphasis omitted).)

On May 9, 2014, Plaintiff filed her Complaint for Issuance of Writ of

Mandamus ("Complaint") in this Court, seeking to compel Defendants to reopen

and re-adjudicate her Petition (Form I-730) on behalf of Efe.  (Doc. 1 at 6-7.)  On

August 27, 2014, Defendants filed their Answer and Affirmative Defenses to the

Complaint, in which they aver, *inter alia*, that the Petition (Form I-730) was

properly adjudicated.  (Doc. 14, ¶¶ 11, 19.)  On January 21, 2015, the Court

entered a Scheduling Order setting February 2, 2015 as the deadline for filing the

administrative record and March 4, 2015 as the deadline for filing summary

judgment motions.  (Doc. 19.)

On March 4, 2015, Defendants filed their Motion seeking dismissal of

Plaintiff's claim for mandamus relief, arguing that Plaintiff has an adequate remedy

available under the Administrative Procedure Act ("APA"), and that she cannot

demonstrate she has a clear and indisputable right to the relief sought in

mandamus or that Defendants have a duty to act in the manner claimed by

Plaintiff.  (Doc. 25.)  Plaintiff agrees, "[f]or purposes of narrowing the issues

presented before the Court," that her claim for mandamus relief should be

dismissed and accordingly limits her response to Defendants' Motion to the claims

raised under § 706 of the APA, 5 U.S.C. § 706.  (Doc. 29 at 1.)

In light of the lack of opposition on this issue, the undersigned recommends that Plaintiff's claim for mandamus relief be dismissed.  Accordingly, the only issue that remains is Defendants' request for summary judgment in their favor as to the claims raised under § 706 of the APA.  Plaintiff's Motion, also filed on March 4, 2015, seeks summary judgment in Plaintiff's favor.  (Doc. 24.)  The undersigned will now address the parties' cross-motions for summary judgment as to the claims raised under § 706 of the APA, both of which are now ripe.

## II.    Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  When deciding cross-motions for summary judgment, "the facts are viewed in the light most favorable to the non-moving party on each motion."  *Chavez v. Mercantil Commercebank, N.A.*, 701 F.3d 896, 899 (11th Cir. 2012).

In *Mahon v. U.S. Department of Agriculture*, the Eleventh Circuit stated:

Summary Judgment is particularly appropriate in cases in which a district court is asked to review a decision rendered by a federal administrative agency.  However, even in the context of summary judgment, an agency action is entitled to great deference.  Under the Administrative Procedure Act, this court must set aside any agency action, finding or conclusion that is found to be arbitrary, capricious, an abuse of discretion, unconstitutional, in excess of statutory authority, without observance of procedure as required by law, or unsupported by substantial evidence.  However, we cannot substitute

4

our judgment for that of the agency.  Instead, we must look to see whether an agency's decision was based on consideration of the relevant factors and whether there has been a clear error of judgment.

485 F.3d 1247, 1253 (11th Cir. 2007) (internal citations and quotation marks omitted).  *See also* 5 U.S.C. § 706 (delineating the scope of judicial review of an agency action).

Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Administrative fact findings are reviewed under the highly deferential substantial evidence standard, *i.e.*, viewing "the record evidence in the light most favorable to the agency's decision and draw[ing] all reasonable inferences in favor of that decision."  *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004).  The Court does not engage in a *de novo* review of an agency's factual findings or reweigh the evidence.  *Id.*  Administrative fact findings may be reversed "only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings."  *Id.*

5

Questions of statutory interpretation and other issues of law are reviewed *de novo*.  *Scheerer v. U.S. Attorney General*, 445 F.3d 1311, 1318 (11th Cir. 2006).

> When reviewing an agency's interpretation of a statute it administers, however, we apply the two-step test articulated in *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-44 (1984). . . . First, we must determine "whether Congress has directly spoken to the precise question at issue." . . . "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." . . . If Congress has not directly addressed the matter, or if the statute is ambiguous with respect to the matter, we move to *Chevron*'s second step to decide "whether the agency's [regulation] is based on a permissible construction of the statute." . . .
> Where Congress has not merely failed to address a precise question, but has given an "express delegation of authority to the agency to elucidate a specific provision of the statute by regulation," the agency's "legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." . . . Indeed, "judicial deference to the Executive Branch is especially appropriate in the immigration context where officials 'exercise especially sensitive political functions that implicate questions of foreign relations.'"

445 F.3d at 1318-19.

"The fact that the agency or even the court could have interpreted the statute differently is of no matter. . . . So long as an agency's interpretation is reasonable, it is controlling."  *Yu v. U.S. Attorney Gen.*, 568 F.3d 1328, 1331-32 (11th Cir. 2009).  An interpretation is reasonable if it is not "arbitrary, capricious, or manifestly contrary to the statute."  *Id.* at 1332.

### III.    Discussion

"Any alien who is physically present in the United States or who arrives in the United States . . . , irrespective of such alien's status, may apply for asylum in accordance with [8 U.S.C. § 1158] or, where applicable, [8 U.S.C. § 1225(b)]."  8 U.S.C. § 1158(a)(1).  Further:

> A spouse or child . . . of an alien who is granted asylum under this subsection *may*, if not otherwise eligible for asylum under this section, be granted the same status as the alien if accompanying, or following to join, such alien.
> . . . An unmarried alien who seeks to accompany, or follow to join, a parent granted asylum under this subsection, and who was under 21 years of age on the date on which such parent applied for asylum under this section, shall continue to be classified as a child for purposes of this paragraph and section 1159(b)(3) of this title, if the alien attained 21 years of age after such application was filed but while it was pending.

8 U.S.C. § 1158(b)(3)(A)-(B) (emphasis added).

"The Attorney General shall establish procedure for the consideration of asylum applications," such as a requirement "to submit fingerprints and a photograph at such time and in such manner to be determined by regulation by the Attorney General."  8 U.S.C. § 1158(d)(1).  Also, "[t]he Attorney General may provide by regulation for any other conditions or limitations on the consideration of an application for asylum not inconsistent with [the Immigration and Nationality Act]."  8 U.S.C. § 1158(d)(5)(B).  It is within the discretion of the Secretary of Homeland Security or the Attorney General to "grant asylum to an alien who has applied for asylum in accordance with the requirements and procedures

established by the Secretary of Homeland Security or the Attorney General."  8

U.S.C. § 1158(b)(1)(A); *see also Farag v. USCIS*, 531 F. Supp. 2d 602, 608

(S.D.N.Y. 2008) ("Granting derivative asylum rests entirely within the discretion of

the USCIS.").

To apply for asylum, an applicant must submit an Application for Asylum and

for Withholding of Removal (Form I-589), "together with any additional supporting

evidence in accordance with the instructions on the form."  8 C.F.R. § 208.3(a).

"The applicant's spouse and children shall be listed on the application and may be

included in the request for asylum if they are in the United States."  *Id.*  Section 16

of Form I-589 also directs applicants to list their spouse and all unmarried children

under the age of 21, and indicate whether any spouse and/or children are being

included in the applicant's request for asylum.  (AR 131.)

A refugee, who has applied for or has been granted asylum, may request

derivative asylum for an accompanying or following-to-join spouse and/or

unmarried, minor children "by filing a separate Request for Refugee/Asylee

Relative [Form I-730] in accordance with the form instructions for each qualifying

family member."  8 C.F.R. § 207.7(d); *see also* 8 C.F.R. §§ 208.21(c), (d).  The

instructions to Form I-730 provide in relevant part:

> For asylees, a child who is under 21 years of age on the date the
> Form I-589, Application for Asylum and Withholding of Removal, is
> received by USCIS will continue to be classified as a child for
> purposes of determining asylum eligibility and related benefits.  For
> refugees, a child who is under the age of 21 on the date the principal

alien is first interviewed by USCIS will continue to be classified as a child for purposes of determining refugee eligibility and related benefits. *In both cases, in order to be considered a derivative child, the principal alien must have listed the child on Form I-589, Registration for Classification as Refugee, as appropriate prior to the derivative's 21st [birthday] and prior to adjudication of the application.*

(AR 208 (emphasis added).)  Form instructions have the force of law.  *See* 8 C.F.R. § 103.2(a)(1) ("Every benefit request or other document submitted to [the Department of Homeland Security] must be executed and filed in accordance with the form instructions, notwithstanding any provision of 8 CFR chapter 1 to the contrary, and such instructions are incorporated into the regulations requiring its submission.").

Further, Form I-730 must be filed "within two years of the refugee's admission to the United States unless USCIS determines that the filing period should be extended for humanitarian reasons."  8 C.F.R. § 207.7(d); *see also* 8 C.F.R. §§ 208.21(c), (d).  "[T]he filing of the Form I-730 within 2 years of admission as a refugee or grant of asylum will serve to notify the Service of a refugee's or asylee's intent to have his/her derivative(s) join him/her in the United States."  *Procedures for Filing a Derivative Petition (Form I-730) for a Spouse and Unmarried Children of a Refugee/Asylee*, 63 FR 3792-01, *3793, 1998 WL 24739 (Jan. 27, 1998).  Untimely filings "only serve to deplete limited refugee admission numbers and refugee resettlement monies needed for currently emerging refugee populations."  *Id.*

In her Application for Asylum and for Withholding of Removal (Form I-589), Plaintiff listed only Princess, her daughter born in 1990 in New York, and indicated that no children were being included in the request for asylum because Princess is a United States citizen.  (AR 131.)  At the time Plaintiff filed her asylum application in December 1993, Efe would have been 11 years old.  Defendants concede that if Efe is Plaintiff's biological daughter and she is born in November 1982, her age is preserved at age 11 as of December 1993, the date Plaintiff filed her Form I-589.

Plaintiff does not contend that she identified Efe in her Form I-589 at any point prior to its adjudication.  Rather, Plaintiff contends that the USCIS erroneously denied her Form I-730 because the requirement to list Efe in Form I-589 is based on a non-binding interoffice policy memoranda, which constitutes an *ultra vires* act.  One Agency Policy Memorandum cited by Plaintiff is *H.R. 1209 - Child Status Protection Act*, issued on August 7, 2002, which provides in relevant part:

> The relevant date to consider in determining whether a dependent who has turned 21 still qualifies as a "child" for purposes of eligibility for derivative status is the date the Principal Applicant (PA) filed the Form I-589, Application for Asylum and for Withholding of Removal. The child must be under 21 years of age on the date that his or her parent, the PA, filed the Form I-589.  There is no requirement that the child have been included as a dependent on the PA's asylum application at the time of filing, *only that the child be included prior to the adjudication*.  This means that the PA may add to his or her asylum application an unmarried son or daughter who is 21 years of age, but who was 20 at the time the PA filed the asylum application.

(Doc. 24 at 8 (emphasis added).)

10

Another Agency Policy Memorandum that Plaintiff cites is *The Child Status Protection Act - Children of Asylees and Refugees*, issued on August 17, 2004, which provides in relevant part: "In order to be eligible for continued classification as a child, the derivative must be listed on the Form I-589 prior to a final CIS decision on the asylum application."  (Doc. 24 at 10; AR 279.)

Plaintiff's argument that Defendants relied on interoffice policy memoranda to deny her Form I-730, is not supported by the record.[3]  Rather, the USCIS relied on the instructions to Form I-730, which direct the principal alien (*i.e.*, Plaintiff) to list the derivative child (*i.e.*, Efe) on Plaintiff's Form I-589 prior to Efe's 21st birthday and prior to the adjudication of the asylum application so that Efe may continue to be considered a derivative child.  (AR 175, 208.)  The parties do not dispute that form instructions are incorporated into the Agency's regulations.  8 C.F.R. § 103.2(a)(1).

However, Plaintiff argues that the plain meaning of the Child Status Protection Act ("CSPA"), 116 Stat. 927 (2002), does not encompass the instructions on Form I-730, and to the extent that a requirement to list all unmarried children under the age of 21 is warranted, the Agency must promulgate a

---

[3] Plaintiff also argues that the denial of her Form I-730 was based solely on policy guidance, which gives it the force of law, and is therefore subject to the rule-making procedures set forth in 5 U.S.C. § 553(b).  (Doc. 24 at 17.)  Assuming *arguendo* that the denial was based solely on policy guidance, general statements of policy, interpretative rules, or rules of agency organizations, procedure, or practice, do not have the force and effect of law.  *See Pasquini v. Morris*, 700 F.2d 658, 662 (11th Cir. 1983).

regulation through the notice and comment process set forth in other provisions of the APA.  Plaintiff's argument is rejected.  As shown earlier, such regulations, requiring the applicant to list her spouse and unmarried children under the age of 21, have been promulgated.  *See* 8 C.F.R. § 208.3(a).  To the extent Plaintiff argues that the regulations are inconsistent with the statutory language, Plaintiff has not shown how the regulations are inconsistent with 8 U.S.C. § 1158.

Section 1158 does not state whether an applicant for asylum should list her unmarried children under the age of 21 in her Form I-589.  However, it gives the Attorney General the discretion to establish a procedure for consideration of asylum applications and to provide, by regulation, for any other conditions or limitations on the consideration of asylum applications.  8 U.S.C. § 1158(d).  This is what the Attorney General did by promulgating 8 C.F.R. § 208.3(a), whose language is consistent with the instructions on Form I-730.  Since Congress does not appear to have addressed the requirement to list an applicant's unmarried children under the age of 21 in the asylum application, the question becomes whether the Agency's regulation is based on a permissible construction of the statute.  The undersigned believes that it is.

The requirement to list all unmarried children under the age of 21 in an asylum application prior to its adjudication, is not inconsistent with the CSPA.  As Defendants point out, without such a requirement, the Agency would be left without a notice of an asylee's intent to have her derivative beneficiaries join her in the

United States.  The lack of notice would be inconsistent with the current two-year deadline for filing Form I-730, which was created in order to give the Agency notice of an asylee's intent to have her derivatives join her in the United States.  *See* 63 FR 3792-01 at *3793.

Although Plaintiff argues that the Agency must interpret the CSPA in such a way as to always promote its purpose, namely the protection of certain children from "aging out" of eligibility for immigration benefits, Defendants convincingly argue that the CSPA does not require the Agency to forgive application deficiencies that may disqualify an otherwise eligible derivative beneficiary.  *See Farag*, 531 F. Supp. 2d at 608 ("As the Attorney General is not required to grant asylum to applicants who meet the eligibility standards, he certainly cannot be required to approve applications of those who fail to follow the proper procedures."); *see also Ramirez-Coria v. Holder*, 761 F.3d 1158, 1162-63 (10th Cir. 2014) (affirming dismissal of application for cancellation of removal where the applicant never provided proof that he completed the biometric process in accordance with the form instructions despite knowing of the requirement and the penalties for failing to do so, and having had ample time to comply).

As in *Ramirez-Coria*, Plaintiff in this case had ample opportunity to identify her daughter Efe in her Form I-589 prior to the adjudication of the application and Efe's 21st birthday.  However, she never did that.  Not only did she fail to give notice of her intent to have Efe join her in the United States, but also this omission

13

arguably rendered Plaintiff's own asylum application incomplete.  Under these circumstances and in light of the Agency's clearly stated reasons for denying Plaintiff's Form I-730, the undersigned does not find the Agency's action to be arbitrary, capricious, an abuse of discretion, unconstitutional, in excess of statutory authority, without observance of procedure, or unsupported by substantial evidence.  While Plaintiff argues that the Agency's denial does not mention a number of facts that she considers to be important, this Court does not re-weigh the evidence or review administrative fact findings *de novo*.[4]  The Agency's denial was supported by substantial evidence and its interpretation of the statute was reasonable.

Accordingly, it is respectfully **RECOMMENDED** that:

1.      Defendants' Motion (**Doc. 25**) be **GRANTED**.

2.      Plaintiff's Motion (**Doc. 24**) be **DENIED**.

3.      The Clerk of Court be directed to enter summary judgment in favor of Defendants and against Plaintiff, terminate any pending motions, and close the file.

---

[4] One such fact that Plaintiff considers to be important is that her Form I-589 was filed more than a decade prior to the enactment of the CSPA.  However, this fact appears to hurt, rather than help, Plaintiff's chances of success on her Form I-730.  *See* In re *A-Y-M*, 25 I. & N. Dec. 791, Interim Decision 3750, 2012 WL 1708444, *792 (BIA May 8, 2012) (finding that 8 U.S.C. § 1158 applies to the child because her mother's asylum application was filed after the enactment of the CSPA).  It is also noteworthy that while Plaintiff cites this case in support of her position, in *A-Y-M*, the mother listed the child on her asylum application and specifically noted that the child was to be included in her application.  *Id.*

**DONE AND ENTERED** at Jacksonville, Florida, on December 9th, 2015.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record

15